UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Marsh USA Inc.,

              Plaintiff,

–v–

Lorraine Osterhage,

              Defendant.

18-cv-3439 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Lorraine Osterhage, the Defendant, was previously employed by Marsh USA, Inc. ("Marsh"), the Plaintiff. After Osterhage left Marsh for another company, her former employer sued to enforce provisions of a confidentiality agreement and a non-solicitation agreement (the "Osterhage Agreements"). Defendant moved to dismiss Plaintiff's claims on the grounds that an indispensable party could not be joined. In the alternative, Defendant asks this Court to stay the action pending proceedings in Missouri state court, or, failing that, to dismiss one of Plaintiff's claims for failure to state a claim. For the reasons given below, the Court grants Defendant's motion to dismiss.

I. **Background**

Plaintiff is a Delaware professional services firm with a principal place of business in New York. Dkt. No. 1, Compl. ¶ 8. Defendant is a resident and citizen of the State of Illinois. Compl. ¶ 9.

The following facts are drawn from the parties' filings in this matter. In deciding a motion to dismiss pursuant to Rule 12(b)(7) for failure to join a party, a court must assume all of the facts in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *See*

1

*Toney-Dick v. Doar*, No. 12-CV-9162 (KBF), 2013 WL 1314954, at *5 (S.D.N.Y. Mar. 18, 2013); 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2004) (on a Rule 12(b)(7) motion, "a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party"). The Court looks to Plaintiff's Complaint, and the Osterhage Agreements, which are attached to the Complaint, Dkt. Nos. 1-1 & 1-2. The Court also considers the 2015 Administrator Agreement between Plaintiff and a former customer, the American Council of Engineering Companies Business Insurance Trust ("Council Trust"), which is incorporated by reference in the Complaint. *See* Dkt. No. 21-1 Ex. A, Administrator Agreement ("Admin. Agree."). In addition, on a Rule 12(b)(7) motion "the Court may consider documents and facts outside the pleadings." *Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-cv-7055 (AJN), 2014 WL 12768461, at *1 (S.D.N.Y. Nov. 25, 2014) (quoting *Toney-Dick*, 2013 WL 1314954, at *7); *see also* 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2004) (noting that in deciding a motion under Rule 12(b)(7), "[t]he district judge is not limited to the pleadings"). At this stage there are no factual disputes as to the document of the pleadings on which the Court relies here, a complaint filed by the Council Trust in a related Missouri action against Plaintiff. Council Trust Complaint, Dkt. No. 21-1.

### A. The Osterhage Agreements

In 2008, while employed by Plaintiff, Defendant signed the Confidentiality Agreement and Non-Solicitation Agreement with her employer. The Confidentiality Agreement provides a fairly broad definition of confidential information and trade secrets, including any client information and any information relating to any client. Dkt. No. 1-1, Confidentiality Agreement ("Conf. Agree.") ¶ Definitions 1(iii) & (v). Defendant agreed, *inter alia*, that she would not use

2

or disclose this information to any other organization or person "while associated with [Marsh USA] and for so long thereafter as the pertinent information or documentation remains confidential." Conf. Agree. ¶ 3. The Confidentiality Agreement contains a provision stating that it is governed by New York law and that "any action or proceeding with respect to this Agreement and my employment shall be brought exclusively" in New York state court or the Southern District of New York. Conf. Agree. ¶ 6(h).

Under the Non-Solicitation Agreement, Defendant agreed, *inter alia*, to a 12-month prohibition on the solicitation and/or servicing of any Marsh clients or prospective clients. Dkt. No. 1-2, Non-Solicitation Agreement ("Non-Solicit. Agree.") ¶¶ 1-2. This limitation only applied to clients with whom Defendant had had contact in the course of her employment or about whom Defendant had obtained confidential information or trade secrets during the last two years of her employment with Plaintiff. *Id.* The Non-Solicitation Agreement also contains a provision stating that it is governed by New York law and that any action arising from the Non-Solicitation Agreement or Defendant's employment may only be brought in New York state court or the Southern District of New York. Non-Solicit. Agree. ¶ 9.

### B. Plaintiff's Agreement with the Council Trust

As part of her employment, Defendant serviced one of Plaintiff's clients, the Council Trust. Compl. ¶¶ 13-14, 23-24. The Council Trust is a program of the American Council of Engineering Companies ("American Council"), a nationwide association of thousands of firms. Compl. ¶ 14. Pursuant to administrator agreements with the Council Trust, Plaintiff brokered insurance policies to the member companies of the American Council. *Id.* The most recent such agreement between Plaintiff and the Council Trust was the 2015 Administrator Agreement. Compl. ¶ 16; Admin. Agree.

3

The Administrator Agreement provides a series of restrictions on Plaintiff's conduct in the event of termination or expiration without renewal. Admin. Agree. ¶ 7. In the event of termination or expiration, the Administrator Agreement states that for a three-year period "following termination of this Agreement" Plaintiff will not "interfere with or oppose" any efforts by the Council Trust to switch a member firm of the American Council to a different insurance program. *Id*. In addition, after expiration, for three years Plaintiff may not offer any of a variety of insurance programs "to any affinity group comprised primarily of consulting engineering companies that are members of [the American Council]." *Id*. However, even after termination, the Agreement also provided that Plaintiff "shall not be restricted . . . from continuing as insurance broker and/or risk consultant for any firm that is a Program participant . . . or from offering or providing insurance brokerage and/or risk consulting services to any other firm other than on an affinity group basis[.]" *Id*. By its terms, the Administrator Agreement is governed by Missouri law and "[a]ny suit, action or proceeding arising out of or relating to this Agreement shall be brought exclusively in a state or federal court located in the State of Missouri." Admin. Agree. ¶ 16.

### C. Non-Renewal of the 2015 Administration and Agreement and Aftermath

In "late 2017," the Council Trust informed Plaintiff that it would not renew the Administrator Agreement, which was to expire on December 31, 2017. Compl. ¶ 31. The Council Trust then hired another company, Greyling, as program administrator. Compl. ¶ 32. Defendant resigned from Plaintiff, effective November 30, 2017. Compl. ¶ 33. Plaintiff alleges that Defendant began working for Greyling in or around December of 2017, immediately before Greyling took over as administrator of the Council Trust. Compl. ¶¶ 36-37. Plaintiff was then informed that a client was being transferred to Greyling and Defendant was the service provider.

4

Compl. ¶ 38. On February 1, 2018, Greyling put out a press release announcing Defendant's hiring and stating that she would "be responsible for providing risk management and property & casualty insurances services to engineering firms who participate in the [Council Trust] Program" and that she would be "an incredible asset" to American Council members. Compl. ¶ 43. As a result, Plaintiff contends, Defendant will be servicing American Council members with whom she had contact while working for Plaintiff and about whom she had access to confidential and proprietary information.

On April 18, 2018, the day before Plaintiff brought this suit, the trustees of the Council Trust brought suit against Plaintiff in Missouri state court, alleging that Plaintiff was violating the Administrator Agreement by interfering with and opposing the Council Trust's efforts to switch American Council firms over to Greyling. Council Trust Complaint ¶¶ 16-28. The Council Trust sought injunctive relief and damages in the Missouri action.

On April 19, 2018, Plaintiff brought this suit against Defendant for breach of the Confidentiality Agreement and the Non-Solicitation Agreement, as well as unfair competition. Compl. ¶¶ 45-66. Defendant moved to dismiss under Rule 12(b)(7) on May 14, 2018, arguing that the Council Trust is an indispensable party that cannot be joined. Dkt. No. 15.

## II.  Legal Standard

A Rule 12(b)(7) motion to dismiss entails a two-step analysis. "First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) *abrogated on other grounds as stated in Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007). The definition of a necessary party encompasses "[p]ersons having an interest in the controversy, and who ought to be made parties[.]" *Id.* (quoting

5

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968)). If a party is not necessary under the Rule 19(a) analysis, then the motion to dismiss under Rule 12(b)(7) is defeated. When a party is necessary, however, a court then must then assess whether "joinder of the absent party is not feasible for jurisdictional or other reasons." *Viacom*, 212 F.3d at 725. For example, joinder is infeasible if it would destroy a federal court's subject matter jurisdiction by bringing into a case a non-diverse party. *See Merrill Lynch*, 500 F.3d at 179 ("joinder of non-diverse defendant under Rule 19(a) destroys jurisdiction" (quoting *Provident Tradesmens Bank*, 390 U.S. at 108)).

If joinder of a necessary party would not be feasible, a court turns to the second step of the analysis: assessing whether the party is truly "indispensable." *Viacom*, 212 F.3d at 725. This requires that the court determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Rule 19(b). This determination is made with reference to a non-exhaustive list of factors in Rule 19(b)(1)-(4). If a court concludes that a party is indispensable, it should dismiss the case.

### III.  Analysis

Defendant's principal argument is that the Council Trust is an indispensable party to this suit and that because joining the Council Trust would destroy jurisdiction by rendering the parties non-diverse, Plaintiff's suit should be dismissed. In the alternative, Defendant argues that the case should be stayed pending the resolution of the Missouri state action. Finally, if the Court does neither, Defendant argues that Plaintiff's unfair competition claim should be dismissed under Rule 12(b)(6) for failure to state a claim. Because the Court agrees that the Council Trust is an indispensable party, it is unnecessary to reach Defendant's arguments in the alternative.

### A. The Council Trust is a Necessary Party

Defendant argues that interpreting Plaintiff's claims would require interpretation of the Administrator Agreement, which is directly at issue between Plaintiff and the Council Trust in the Missouri litigation. Defendant contends that the Council Trust is a necessary party because under Rule 19(a)(2)(i), this is a situation in which a "person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." The Court looks first to whether adjudicating Plaintiff's claims would implicate the Administrator Agreement, then to whether the Council Trust is a necessary party whose joinder would be infeasible.

#### 1. Adjudicating Plaintiff's Claims Would Require Interpreting the Administrator Agreement

Defendant argues that the Council Trust is a necessary party because in order to evaluate Plaintiff's breach of contract claims under the Osterhage Agreements, the Court would first have to interpret certain provisions of the Administrator Agreement. Specifically, Defendant argues that the Court would need to interpret: (a) provisions of the Administrator Agreement limiting Plaintiff's post-termination activity relative to American Council members; (b) a clause of the Administrator Agreement that gives the Council Trust trustees access upon request to Plaintiff's records concerning the Council Trust program; and (c) unspecified parts of the Administrator Agreement relating to which companies counted as "clients" of Plaintiff's. Plaintiff counters that the Osterhage Agreements and its own claims are entirely independent of the Administrator Agreement. The Court addresses each of Defendant's three arguments in turn.

As to the first argument, the Court agrees with Defendant that determining whether the Non-Solicitation Agreement is enforceable requires interpreting the Administrator Agreement.

As both of these contracts contain New York choice-of-law clauses, the Court looks to New York law to determine enforceability. Under New York law, a non-compete agreement like the Non-Solicitation Agreement is only enforceable if it is reasonable. *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 369 (2015). Such an agreement will only be considered reasonable if, *inter alia*, it is "is *no greater* than is required for the protection of the *legitimate interest* of the employer[.]" *Id.* (emphases in original); *Heartland Sec. Corp. v. Gerstenblatt*, No. 99-CV-3694 (WHP), 2000 WL 303274, at *5 (S.D.N.Y. Mar. 22, 2000) (while concerns about employee mobility and free enterprise require a strict approach to such agreements, "the employer is entitled to protection from unfair or illegal conduct that causes economic injury." (quoting *Am. Broad. Companies, Inc. v. Wolf*, 52 N.Y.2d 394, 404 (1981)). This determination "focuses on the particular facts and circumstances giving context to the agreement." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 390 (1999). It is true, as Plaintiff contends, that protection of an employer's client base can constitute a legitimate interest under this standard. *See, e.g.*, *Silipos, Inc. v. Bickel*, No. 06-CV-02205, 2006 WL 2265055, at *3 (S.D.N.Y. Aug. 8, 2006). However, in this case, the extent to which Plaintiff is able to participate in the market for American Council members is relevant to whether Plaintiff has a legitimate interest in prohibiting Defendant from working in that market. *See Int'l Bus. Machines Corp. v. Visentin*, No. 11 CIV. 399 LAP, 2011 WL 672025, at *21 (S.D.N.Y. Feb. 16, 2011), *aff'd*, 437 F. App'x 53 (2d Cir. 2011) (non-compete agreement was overbroad where it prohibited the employee from working in a market in which the employer does not participate); *see generally Am. Broad.*, 52 N.Y.2d at 404 (non-compete covenants must be reasonable in scope to be enforced). The Administrator Agreement states that for three years post-termination, Plaintiff "shall not offer . . . any affinity workers' compensation insurance program and/or business property/casualty insurance program to any

affinity group comprised primarily of consulting engineering companies that are members of [the American Council]." Admin. Agree. ¶ 7. However, Plaintiff is not restricted from "continuing as insurance broker and/or risk consultant for any firm that that is a Program participant as of the date of termination of this Agreement or from offering or providing insurance brokerage and/or risk consulting services to any firm other than on an affinity group basis[.]" Admin. Agree. ¶ 7. Interpreting the way in which these interlocking provisions interact is necessary to determining the extent to which Plaintiff is able to participate in the market for American Council members, and thus the scope of Plaintiff's legitimate interest in preventing Defendant from working with those firms.

Similarly, the Administrator Agreement states that for three years after termination, Plaintiff "will not interfere with or oppose any efforts of [the Council] Trust to switch any firm that is or was a member of [the American Council] from any affinity workers' compensation insurance program and/or business property/casualty insurance program to a different insurance program and (ii) it will direct its employees not to interfere with or oppose such effort." Administrator Agreement ¶ 7. Depending on the interpretation of this provision, this could have implications for whether the scope of the Non-Solicitation Agreement is reasonable. *See Am. Broad. Companies, Inc. v. Wolf*, 52 N.Y.2d at 404. If the Administrator Agreement prohibits Plaintiff from interfering with the Council Trust's efforts to shift American Trust members to Grayling, then Plaintiff might not have a *legitimate* interest in interfering with the ability of Grayling's employee, Defendant, to participate in that process. Indeed it may even be that, as Defendant argues, the instant suit could constitute prohibited interference. The Court takes no position on whether these are correct interpretations of the Administrator Agreement. However, this does mean that interpreting the Administrator Agreement's limitations on what Plaintiff may

or may not do post-termination is necessary to determine whether the Non-Solicitation Agreement is sufficiently tailored to a legitimate interest of Plaintiff's.

As to Defendant's second argument, the Court agrees with the Defendant that it would have to interpret the Administrator Agreement to determine whether, or simply to what extent, Defendant violated the Confidentiality Agreement. As noted above, the Confidentiality Agreement states that "I agree that I will not, while associated with the Company and *for so long thereafter as the pertinent information or documentation remains confidential*, for any purpose whatsoever, directly or indirectly use, disseminate or disclose to any other person, organization or entity Confidential Information or Trade Secrets[.]" Conf. Agree. ¶ 3 (emphasis added). Yet as Defendant points out, the Administrator Agreement states that with respect to "[a]ll records received or developed by Administrator in connection with its brokering of the Programs . . . upon termination of the [Administrator] Agreement, [Marsh] shall provide the [Council] Trust with copies of all such records which the [Council] Trust requests." Admin. Agree. ¶ 5(a). Interpreting the scope of that language is relevant to determining whether the information Defendant is accused of using or divulging still falls under the Confidentiality Agreement, or whether some or all of it would no longer qualify as confidential given the access that the Council Trust was granted to program information. Therefore, adjudicating this breach of contract claim also requires interpreting the Administrator Agreement.

Given the above, adjudicating Plaintiff's claims based on the Confidentiality Agreement and the Non-Solicitation Agreement would require the interpretation of the Administrator Agreement. Because the above two reasons are sufficient to conclude that this Court would need to interpret the Administrator Agreement to address Plaintiff's breach of contract claims, it is unnecessary to reach Defendant's third argument regarding interpretation of the term "client."

As to Plaintiff's unfair competition claim, adjudicating this claim also implicates Defendant's contractual duties under the Osterhage Agreements, and thus the Administrator Agreement as well. Plaintiff's Complaint explicitly lists Defendant's contractual duties under both the Non-Solicitation Agreement and the Confidentiality Agreement as bases for its unfair competition claim. Compl. ¶¶ 61-62. And while Plaintiff argues that its unfair competition claim goes "beyond violations of [Defendant's] contractual agreements with Marsh," Dkt. No. 20, Pl. Br., at 11, it also argues that its unfair competition claim is a claim in the alternative based in part on the "contract-based violations cited in the Complaint," *id.* Even beyond the significant overlap between Plaintiff's contract and tort claims, Plaintiff expressly argues that its unfair competition claim is an argument in the alternative that "would come squarely into play" if the Osterhage Agreements were "in some way unenforceable." *Id* at 12. This indicates a recognition of the fact that if the Osterhage Agreements are enforceable, this might bar some or all of Plaintiff's tort claims as duplicative. *See, e.g., See Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F.Supp.2d 541, 558 (S.D.N.Y.2007) ("It is well-settled, however, that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract." (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390 (1987)). Therefore, since adjudicating Plaintiff's contract claims is necessary to determine both the scope and substance of its tort claim, the resolution of Plaintiff's unfair competition claim also requires interpreting the Administrator Agreement.

### 2. The Council Trust is a Necessary Party for Whom Joinder is Infeasible

Having determined that adjudicating Plaintiff's claims would require interpreting the Administrator Agreement, the Court now turns to whether this renders the Council Trust a

11

necessary party. Under Rule 19(a)(1)(B)(i), a party qualifies as a necessary party if, *inter alia*, it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect." Most relevantly to the case at hand, "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002) (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir.1996)). For the reasons given above, resolving Plaintiff's claims would require defining the Council Trust's rights under the Administrator Agreement. Doing so in the Council Trust's absence would thus impair or impede its ability to protect its interest in the interpretation of its rights under the Administrator Agreement. *Id.*; *Peregrine Myanmar*, 89 F.3d at 48 ("The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests [of the non-party under a contract]."). This is particularly true in light of the pending Missouri action in which the Administrator Agreement is in dispute. *See Fagioli*, 2014 WL 12768461, at *3; *see also BRB Internacional S.A. v. Weinstein Co. LLC*, No. 17-CV-02065 (ALC) (KHP), 2018 WL 1111060, at *1 (S.D.N.Y. Feb. 27, 2018) ("the risk of having another court re-decide a party's rights and obligations under a contract 'is precisely what Rule 19 seeks to avoid'" (quoting *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708-09 (S.D.N.Y 1997)). As a result, the Council Trust "clearly claims an interest in the subject of this action, because any adjudication of the rights and obligations of the parties under the [Administrator] Agreement in this Court is likely to affect the interests it is seeking to enforce in th[e] other action[]." *Fagioli*, 2014 WL 12768461, at *3. Indeed, some of the very same provisions for the Administrator Agreement are at issue in the Missouri state proceeding,

such as the meaning of the non-interference provision and the extent to which Plaintiff is able to participate in the market for American Council members. *See generally* Council Trust Complaint. Thus, adjudicating Plaintiff's claims "may impair the ability of [the Council Trust] to protect the very interest that is the subject of those other proceedings." *Fagioli*, 2014 WL 12768461, at *3. The Council Trust is therefore a necessary party.

The parties do not dispute that joining the Council Trust would be infeasible because it would destroy diversity. Pl. Br. at 8 ("Marsh agrees that if all of the [Council Trust] trustees were joined to this action, there would not be complete diversity and this Court would lack subject matter jurisdiction."). In fact, a previous action between the Council Trust and Plaintiff was dismissed for lack of diversity jurisdiction. *Alper v. Marsh, USA, Inc.*, 2018 WL 1726627, at * 1 (E.D. Mo. Apr. 10, 2018). Therefore, joinder would be infeasible. *See Merrill Lynch*, 500 F.3d at 179.

### B. The Council Trust Is an Indispensable Party

Having found that the Council Trust is both a necessary party and that its joinder is infeasible, the Court now turns to whether it is truly indispensable. *See Merrill Lynch*, 500 F.3d at 180. Under Rule 19(b), courts are to balance the following non-exhaustive factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Weighing the above factors in light of the circumstances of this case, the Court concludes that the Council Trust is an indispensable party. A judgment interpreting the Council Trust's

13

rights under the Administrator Agreement could plainly prejudice the Council Trust, particularly in light of the ongoing litigation in Missouri. *See, e.g.*, *Fagioli*, 2014 WL 12768461, at *3. While allowing the litigation in Missouri to run its course might shed some light on the meaning of the Administrator Agreement, it would not necessarily do so in a way that would be relevant to the case at hand. Plaintiff's suggestion that the Court cabin its judgment to the parties to the instant case risks creating unnecessary inconsistency or duplication. On the other hand, a judgment in the absence of the Council Trust could be adequate to resolve the disputes of the parties currently before the Court. Finally, Plaintiff likely has an adequate remedy if the action were dismissed for nonjoinder. Defendant argues that if this action were dismissed, Plaintiff could simply sue her in Missouri court. It is true, as Plaintiff points out, that the Confidentiality Agreement and the Non-Solicitation Agreement include provisions requiring disputes arising from the provisions to be adjudicated in New York. Pl. Br. at 1-2. Yet Defendant counters that she would not invoke those provisions, particularly because they exist to protect Plaintiff, not her, as she resides in Missouri. Dkt. No. 22, Def. Rep. Br. at 6-7. And there is no reason to think that the parties could not waive this requirement in writing as provided for in the Osterhage Agreements. Conf. Agree. ¶6(i); Non-Solicit. Agree. ¶ 10. All that aside, the Osterhage Agreements expressly provide that claims could be brought in New York state courts, and Plaintiff has provided no reason why this would not be feasible. Conf. Agree. ¶6(h); Non-Solicit. Agree. ¶ 9. Weighing these factors in the circumstances of this case, the Court holds that the Council Trust is an indispensable party.

**IV. Conclusion**

For the reasons given above, the Court hereby grants Defendant's motion to dismiss the case under Rule 12(b)(7). Defendant's request for oral argument is hereby denied. This resolves

docket items 15 and 18.  The Clerk of Court is directed to enter judgment and mark this case as closed.

       SO ORDERED.

Dated:   March 26, 2019
           New York, New York

                                          ALISON J. NATHAN
                                        United States District Judge